## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| A & F ENTERPRISES, INC. II, *et al.*[1], | ) | No. 13-07930 (DRC) |
| | ) | |
| Debtor. | ) | Jointly Administered |

### FINAL ORDER APPROVING INTERIM MANAGEMENT AGREEMENT

This matter coming before the Court on the continued hearing on the Emergency Motion to Enter Into Management Agreement With Siyavoush Soleimani (the "Motion"), filed by Frances Gecker, solely as Chapter 11 trustee (the "Trustee") for A & F Enterprises, Inc., II and its affiliated debtors (collectively, the "Debtors"), seeking the entry of an order authorizing the Trustee to enter into an Interim Management Agreement with Siyavoush Soleimani (the "Manager"); the Court having conducted a hearing on the Motion on May 12, 2014, and having entered an order at that hearing granting the Motion on an interim basis, and continuing that hearing to May 20, 2014 for the entry of a final order; the Trustee having circulated the revised Interim Management Agreement attached hereto as **Exhibit A** (the "Agreement") among the Debtors, the Manager, the Office of the United States Trustee and IHOP Franchising, LLC and certain of its affiliated entities; the Court having heard the statements of counsel, being well advised in the premises and having jurisdiction over this core proceeding;

### IT IS HEREBY ORDERED THAT:

1.    The Motion is granted and the Agreement is approved.

Dated: 5/20/14

ENTERED:

*Donald R. Cassling*

UNITED STATES BANKRUPTCY COURT

Prepared by:
Micah R. Krohn (No. 6217264)
FrankGecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Phone: (312) 276-1400
*mkrohn@fgllp.com*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: A & F Enterprises, Inc. II (6229); AbuBecker, Inc. (3801); AEA Enterprises, Inc. (5429); AEE Enterprises, Inc. (5502); East Peoria Enterprise, Inc. (4035); Elham, Inc. (8336); ElSayed, Inc. (0698); Fatma Enterprises, Inc. (5595); Halima I, Inc. (1829); Mahmoud, Inc. (2263); Sabah Restaurant, Inc. (4916); Westchester Enterprise, Inc. (8376); and Ali Alforookh (0099).

# EXHIBIT A

## INTERIM MANAGEMENT AGREEMENT

**THIS INTERIM MANGEMENT AGREEMENT** (the "Management Agreement"), is made this **20th** day of **May, 2014** by and between **Frances Gecker**, solely in her capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estates, jointly administered under lead bankruptcy case no. 13-7930 (DRC), of Ali Alforookh and the related corporate debtor entities[1] (collectively, the "Debtors"), and **Siyavoush Soleimani** (the "Manager" and together with the Trustee, the "Parties").

## WITNESSETH:

**WHEREAS**, on February 28, 2013, each of the Debtors filed voluntary Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Northern District of Illinois (the "Court").

**WHEREAS**, the Debtors own and operate, either directly or indirectly, the following IHOP restaurants (collectively, the "Restaurants") pursuant to franchise agreements, and other leases and agreements (collectively, the "IHOP Agreements") with IHOP Franchising, LLC; IHOP Franchise Company, LLC; IHOP Properties, LLC; IHOP Property Leasing, LLC; IHOP IP, LLC; International House of Pancakes, LLC (collectively, "IHOP"), and pursuant to agreements with other entities (collectively with the IHOP Agreements, the "Operating Agreements"):

| Debtor | IHOP Restaurant No. | Location |
|--------|---------------------|----------|
| A&F Enterprises, Inc. II | 1206 | 6501 W. North Ave., Oak Park, IL |
| AEA Enterprises, Inc. | 5429 | 2109 E. Empire St., Bloomington, IL |
| AEE Enterprises, Inc. | 1300 | 583 South Route 59, Aurora, IL |
| East Peoria Enterprises, Inc. | 3304 | 214 W. Camp St., East Peoria, IL |
| Elham, Inc. | 1294 | 4228 W. Elm St., McHenry, IL |
| Elsayed, Inc. | 5324 | 10910 New Halls Ferry Road, St. Louis, MO |
| Fatma Enterprises, Inc. | 1280 | 194 South Bolingbrook Dr., Bolingbrook, IL |
| Halima I, Inc. | 1292 | 1444 N. Larkin Ave., Joliet, IL |
| Mahmoud, Inc. | 3200 | 1020 W. Layton Ave., Milwaukee, WI |
| Sabah Restaurant, Inc. | 5306 | 101 S. Randall Rd., Elgin, IL |
| Westchester Enterprises, Inc. | 1221 | 1137 S. Mannheim Rd., Westchester, IL |
| Ali Alforookh | 2011 | 3000 Deerfield Rd., Janesville, WI |
| Ali Alforookh | 5405 | 1110 Miller Park Way, West Milwaukee, WI |
| Ali Alforookh | 5412 | 5014 N. Big Hollow Rd., Peoria, IL |

---

[1] The Debtors whose estates are being administered in bankruptcy by the Trustee, along with the last four digits of each Debtor's federal tax identification or social security number, include: A & F Enterprises, Inc. II (6229); AbuBecker, Inc. (3801); AEA Enterprises, Inc. (5429); AEE Enterprises, Inc. (5502); East Peoria Enterprise, Inc. (4035); Elham, Inc. (8336); ElSayed, Inc. (0698); Fatma Enterprises, Inc. (5595); Halima I, Inc. (1829); Mahmoud, Inc. (2263); Sabah Restaurant, Inc. (4916); Westchester Enterprise, Inc. (8376); and Ali Alforookh (0099).

| Ali Alforookh | 5428 | 2415 S. Oneida St., Green Bay, WI |
| Ali Alforookh | 5434 | 4101 W. Wisconsin Ave., Grand Chute, WI |
| Ali Alforookh | 5455 | 1400 S. Koeller St., Oshkosh, WI |

**WHEREAS,** on May 12, 2014, the Court entered its order confirming Frances Gecker's appointment as Chapter 11 trustee for each of the Debtors' estates.

**WHEREAS,** the Trustee has determined that proceeding with a proposed sale of the Restaurants, other than Restaurant Nos. 1221 and 1280, to the Manager and/or one or more affiliates of the Manager, subject to Bankruptcy Court approval and pursuant to a Purchase Agreement to be negotiated between the Parties (the "Purchase Agreement"), will preserve and maximize the value of the estate.

**WHEREAS,** the Trustee has further determined that in order to facilitate a sale of the Restaurants to Manager, and preserve the value of the estate, it is in the best interests of the estate to enter into this Management Agreement, subject to Court approval (the "Order"), providing for Manager's management of the Restaurants pending the contemplated sale thereof.

**WHEREAS,** it is anticipated that during the Term (defined below), subject to the Trustee's prior written approval, the Manager may advance substantial amounts of its own funds in connection with the operation of the Restaurants, solely to ensure the preservation of the value of each of the Restaurants, which advances the Parties have agreed to treat either as an offset to the purchase price under the Purchase Agreement, or, in the event that a sale of the Restaurants to the Manager does not close, as super-priority administrative expense claims under Bankruptcy Code section 364(c)(1), with priority over all other administrative expenses of the kind set forth in Bankruptcy Code sections 503(b) or 507(b).

**NOW THEREFORE,** in consideration of the mutual agreements and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is mutually agreed and convenanted by the Parties as follows:

1.  **Recitals.**

The recitals hereinabove contained are incorporated herein as though fully set forth in this Management Agreement.

2.  **Appointment.**

Subject to the entry of the Order, the Trustee hereby appoints the Manager, on an exclusive basis, to act as the Trustee's interim managing agent as to the operation of the Restaurants.

3.  **Term.**

This term of this Management Agreement (the "Term") shall commence upon the entry

of the Order and continue in effect until the earlier to occur of the closing of the transactions contemplated by the Purchase Agreement, or the election of either the Trustee or the Manager to terminate this Management Agreement upon five business days' prior written notice pursuant to the Notice provisions set forth below.

**4.** **Manager's Obligations.**

Manager shall be responsible for:

(a)     The operation of the Restaurants, including the collection from customers of the Restaurants, on behalf of the Trustee, all taxes levied or charged, if any, for the sale of food, alcoholic and non-alcoholic beverages, or any other products by the Restaurants;

(b)     Maintaining the books and financial records for the Restaurants, on behalf of the Trustee;

(c)     Making full and timely payment of all obligations and liabilities accrued and/or incurred by the Trustee, or coming due, from and after the date hereof in connection with the operation of the Restaurants including, but not limited to, all obligations under any and all Operating Agreements, accounts payable, wages and salaries, utilities, taxes, insurance, license fees, and any other obligations which the Trustee may incur, or coming due, from and after the date hereof, in connection with the operation of the Restaurants;

(d)     The assumption of responsibility for all aspects of the operation of the Restaurants, including the purchase and maintenance of food and other inventory in an amount consistent with the historical practice of each Restaurant, but in no event to exceed $12,000 inventory on hand per Restaurant;

(e)     Maintaining, on behalf of the Trustee, policies of insurance for the Restaurants with coverage and limits equal to or in excess of those required by law. Said insurance policies shall insure Manager's activities upon, in, or about the Restaurants against claims for bodily injury, death or property damage or loss;

(f)     Maintaining all records required of the Restaurants, and otherwise cooperating with the Trustee in assuring compliance with all applicable laws and the IHOP Agreements;

(g)     Recruiting, training, employing and compensating such employees and other personnel, on behalf of the Trustee, as may be necessary for the efficient operation of the Restaurants, all of which shall be under the exclusive direction and control of the Manager;

(h)     Adhering to all obligations under the Operating Agreements;

(i)     Maintaining the Restaurants and all fixtures and equipment therein in good, clean and serviceable condition;

{AF/001/00038540.DOCX/3}                                3

(j)     As necessary, diligently pursuing and processing applications for all applicable licenses, permits and similar authorizations (and renewal of same) in connection with the operation of the Restaurants;

(k)     Timely executing all documents, filing all necessary returns, and remitting all necessary fees for any local, state or federal taxes directly or indirectly related to the operation of the Restaurants; and

(l)     Not engaging in, or allowing any person(s) to engage in, any felonious or other inappropriate conduct that could result in any adverse action taken by any local, state or federal agency against the Trustee, the Manager or the Restaurants, which actions shall include, but not be limited to, license revocation and/or suspension proceedings. If such conduct shall occur, the Manager shall immediately notify the Trustee of same and the Trustee shall have the option of immediately terminating this Management Agreement and any other related agreements.

**5.     Trustee's Cooperation.**

The Trustee shall reasonably cooperate with the Manager, IHOP and any other third party in connection with the operation of the Restaurants during the term of this Management Agreement.

**6.     Manager Advances.**

Subject to the Trustee's prior written approval, the Manager may advance payments up to $750,000 through June 30, 2014 (the "Advances") in connection with the operation of the Restaurants solely to ensure the preservation of the value of each of the Restaurants. The Manager shall be entitled to a dollar for dollar reduction of the purchase price under the Purchase Agreement on account of the Advances. In the event that a sale of the Restaurants to the Manager does not close on or before June 30, 2014, or such other date as the Parties may agree in writing, the Advances shall be entitled to treatment as super-priority administrative expense claims under Bankruptcy Code section 364(c)(1), with priority over all other administrative expenses of the kind set forth in Bankruptcy Code sections 503(b) or 507(b).

**7.     Management Fee.**

In exchange for the performance of the duties set forth herein by the Manager, the Manager shall be entitled to receive a management fee solely as set forth herein (the "Management Fee"). If the Trustee consummates a sale of the Restaurants with an entity unrelated to the Manager or any of its affiliates, in addition to the super-priority claims on account of any Advances described in the preceding sentence, the Manager shall be entitled to a Management Fee in the amount of $5,000 per restaurant per month. The Management Fee shall at all times be subordinate to any and all obligations incurred by the Trustee and/or the Manager

in connection with the operation of the Restaurants during the Term.   The Manager acknowledges that it cannot earn any Management Fee if obligations incurred during the Term are due and owing under any of the Operating Agreements.

**8.**   **Compliance with Law.**

The Manager shall comply with all governmental laws, ordinances, rules and regulations applicable to the operation of the Restaurants.

**9.**   **Governing Law and Interpretation.**

This Management Agreement shall be governed and conformed in accordance with the laws of the State of Illinois, without regard to its conflict of laws provision.   The Parties agree specifically that any action brought to enforce any term or provision of this Agreement shall be brought in the Courts, and that each Party has stipulated to the exercise of jurisdiction by the Court over the subject matter of this Management Agreement.   Should any provision of this Management Agreement be declared illegal or unenforceable and not susceptible to modification so as to be legal and enforceable, such provision shall immediately become null and void, leaving the remainder of this Management Agreement in full force and effect.

**10.**   **Amendment.**

This Agreement may not be modified, altered or changed except upon express written consent of all of the Parties wherein specific reference is made to this Management Agreement.

**11.**   **Entire Agreement.**

This Management Agreement sets forth the entire agreement between the Parties, and fully supersedes all prior oral or written agreements, understandings, representations and warranties, and courses of conduct and dealing between the Parties on the subject matter hereof. The Parties acknowledge that they have not relied on any representations, promises, or agreements of any kind in connection with their decision to enter into this Management Agreement, except for those set forth in this Management Agreement.

**12.**   **Review by Counsel.**

Each Party represents and warrants that it read this Management Agreement and has signed it voluntarily after having had the opportunity to consult with its respective counsel.   To the extent that any Party has elected to sign this Management Agreement without first consulting with counsel, it has done so voluntarily, and hereby waives any and all claims that such Party may have with respect to any other Party and/or this Management Agreement based on the failure to consult with counsel.

**13.**   **Assignment and Parties in Interest.**

This Agreement shall inure to the benefit of and be binding upon the Parties and their

respective successors and assigns; provided however, the Manager may not assign this Management Agreement or any interest herein, except upon the prior written consent of the Trustee and IHOP, which consent shall not be unreasonably withheld.

**14.** **Execution of Agreement.**

This Management Agreement may be signed in counterpart, and each executed copy shall be a counterpart original fully enforceable against the Party executing the counterpart, but all counterparts shall together constitute one instrument. Facsimile and electronic signatures of this Management Agreement shall be deemed valid and binding. Execution is complete at the time of the last necessary signature.

**15.** **Section Headings.**

The headings contained in this Management Agreement are for reference only and shall not affect the interpretation of this Management Agreement.

**16.** **Waiver of Default.**

No waiver by the Parties of any default or breach of any term, condition or covenant of this Management Agreement shall be deemed to be a waiver of any subsequent default or breach of the same or any other term, condition or covenant contained herein.

**17.** **Notices.**

All notices, demands or other communications required or permitted to be given or made hereunder shall be in writing and delivered personally or sent by pre-paid, first class, certified or registered air mail, return-receipt requested, or by electronic transmission to the intended recipient thereof at its address or email address set out below; provided that, any Party may change the address to which notices, requests, demands or other communications to such Party shall be delivered or mailed by giving notice thereof to the other Parties hereto in the manner provided herein. Any such notice, demand or communication shall be deemed to have been duly given immediately (if given or made by confirmed email), or three days after mailing (if given or made by letter addressed to a location within the country in which it is posted), and, in providing same, it shall be sufficient to show that the envelope containing the same was duly addressed, stamped and posted or that receipt of an email was confirmed by the recipient. The addresses and email addresses of the Parties for purposes of this Agreement are:

<table>
<tr><td>**If to the Manager:**</td><td>**If to the Trustee:**</td></tr>
<tr><td>Siyavoush Soleimani<br>c/o IHOP #005<br>7006 Sunset Boulevard<br>Hollywood, CA 90028-7510<br>*ihop005@sbcglobal.net*</td><td>Frances Gecker, Trustee<br>FrankGecker LLP<br>325 N. LaSalle, Suite 625<br>Chicago, IL 60654<br>*fgecker@fgllp.com*</td></tr>
</table>

18.   **Reservation of Rights.**

The Parties acknowledge that IHOP's consent to the transaction contemplated by this Management Agreement does not and shall not constitute a waiver of any of IHOP's rights under the IHOP Agreements.

**IN WITNESS WHEREOF,** the Parties have executed this Management Agreement as of the day and year first above written.

**MANAGER:**

By: _____
    Siyavoush Soleimani

**TRUSTEE:**

FRANCES GECKER, solely in her capacity as the Chapter 11 Trustee in the Chapter 11 cases of A&F Enterprises, II, Inc. and its affiliated Chapter 11 Debtors

By: /s/ _____
    One of her Attorneys

**FOR CONSENT PURPOSES ONLY:**

IHOP Franchising, LLC; IHOP Franchise Company, LLC; IHOP Properties, LLC; IHOP Property Leasing, LLC; IHOP IP, LLC; International House of Pancakes, LLC

By: /s/ _____
    One of their Attorneys

{AF/001/00038540.DOCX/3}                    7